MAYER BROWN LLP
NEIL M. SOLTMAN (SBN 67617)
  nsoltman@mayerbrown.com
MATTHEW H. MARMOLEJO (SBN 242964)
  mmarmolejo@mayerbrown.com
RUTH ZADIKANY (SBN 260288)
  rzadikany@mayerbrown.com
REBECCA B. JOHNS (SBN 293989)
  rjohns@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Plaintiffs
MICHIKO SHIOTA GINGERY, KOICHI MERA, and
GAHT-US CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHIKO SHIOTA GINGERY, an individual, KOICHI MERA, an individual, GAHT-US Corporation, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF GLENDALE, a municipal corporation, SCOTT OCHOA, in his capacity as Glendale City Manager,<br><br>Defendants. | Case No. 2:14-cv-1291<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Michiko Shiota Gingery, Koichi Mera and GAHT-US Corporation ("GAHT"), allege as follows:

## JURISDICTION

1. This action arises under, *inter alia*, 42 U.S.C. § 1983; the foreign affairs powers of the United States, U.S. Const. art. II, sec. 1, cl. 1; sec. 2, cl. 1; sec. 2, cl. 2; and sec. 3; and the Supremacy Clause, U.S. Constitution, art. VI, cl. 2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and the power to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over all claims that are so related to claims in the action within original jurisdiction such that they form part of the same case or controversy.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the conduct complained of occurred, is occurring, and/or will continue to occur in Glendale, California, within this judicial district. Defendant City of Glendale ("Glendale") maintains its offices in Glendale, California. Defendant Scott Ochoa ("Ochoa"), who is sued in his official capacity as the City Manager of Glendale, maintains his offices in Glendale, California.

## NATURE OF THE ACTION

3. Plaintiffs seek injunctive and declaratory relief relating to the presence of a monument authorized by Glendale and Ochoa and condemning the nation of Japan for its involvement with and treatment of what have come to be known as "comfort women." The monument is located on public land in a publicly owned park in Glendale known as Central Park, located at 201 South Colorado St., Glendale, CA 91205 (the "Public Monument"). Plaintiffs seeks this relief on the grounds that the Public Monument exceeds the power of Glendale, infringes upon the federal government's power to exclusively conduct the foreign affairs of the United States, and violates the Supremacy Clause of the U.S. Constitution.

4. The Public Monument threatens to negatively affect U.S. foreign relations with Japan, one of this nation's most important allies, and is inconsistent with the foreign policy of the United States. That policy is to encourage the relevant foreign nations with direct involvement in the historic events involving comfort women, including the governments of Japan and the Republic of Korea ("South Korea"), to resolve the debate relating to comfort women between or among themselves without the involvement of the United States. The proper historical characterization of the events in issue and the precise role of national governments in those acts have been the subject of discussions and negotiations between the governments of Japan and South Korea for decades, and remain an active topic of political debate.

5. The emplacement of the Public Monument also violates Glendale's Municipal Code.

**PARTIES**

6. Plaintiff Michiko Shiota Gingery ("Gingery") is a long-time resident of Glendale. Gingery lives in the vicinity of Central Park and the Public Monument. Gingery is a founding member of Glendale's Sister City Committee, a committee created to develop and administer Glendale's Sister City Program. In this capacity, Gingery made significant contributions to Glendale's establishment of a Sister City relationship with the City of Higashiosaka (at the time called Hiraoka), Japan, Glendale's first Sister City. Gingery was born in Japan, and is now a naturalized U.S. citizen. As a Glendale resident of Japanese heritage, Gingery believes the Public Monument presents an unfairly one-sided portrayal of the historical and political debate surrounding comfort women and presents the potential to disrupt the United States' strategic alliances with its closest East Asian allies, Japan and South Korea. She also believes the emplacement of the Public Monument represents a significant obstacle in maintaining friendly relations among Glendale's sister-cities, the primary objective of the Sister City Program.

Gingery suffers feelings of exclusion, discomfort, and anger because of the position espoused by her city of residence through its display and endorsement of the Public Monument. Gingery would like to use Glendale's Central Park and the Adult Recreation Center located within Central Park. But she now avoids doing so because she is offended by the Public Monument's pointed expression of disapproval of Japan and the Japanese people. In addition, the presence of the Public Monument diminishes Gingery's enjoyment of the Central Park and its Adult Recreation Center.

7. Plaintiff GAHT-US Corporation ("GAHT-US") is a non-profit public benefit corporation organized under the laws of the State of California. The purpose of GAHT-US is to provide accurate and fact-based educational resources to the public in the U.S., including within California and Glendale, concerning the history of World War II and related events, with an emphasis on Japan's role. GAHT-US has undertaken this goal in an effort to enhance a mutual historical and cultural understanding between and among the Japanese and American people. Given its mission, GAHT-US believes that the Public Monument advances an unfairly biased portrayal of the Japanese government's purported involvement with comfort women during the Second World War. Individual members of GAHT-US reside in Glendale and nearby cities. GAHT-US's members suffer feelings of exclusion, discomfort, and anger by the continued presence of the Public Monument, and the controversial and disputed stance on the debate surrounding comfort women that it perpetuates. Although GAHT-US members would like to use Glendale's Central Park and its Adult Recreation Center, they no longer intend to do so as a result of their distress due to the Public Monument. In addition, the presence of the Public Monument diminishes GAHT-US members' enjoyment of the Central Park and its Adult Recreation Center.

8. Plaintiff Koichi Mera ("Mera") is a Japanese-American resident of the City of Los Angeles and the President of GAHT-US. Mera disagrees with and is

offended by the position espoused by Glendale through the Public Monument and its pointed condemnation of the Japanese people and government.  Although Mera would like to use Glendale's Central Park and its Adult Recreation Center, as a result of his alienation due to the Public Monument, he avoids doing so.  In addition, the presence of the Public Monument diminishes Mera's enjoyment of the Central Park and its Adult Recreation Center.

9.   Defendant Glendale is a political subdivision of the State of California operating under a charter authorized by the State of California that empowers it to pass lawful ordinances and to govern and administer municipal activities within Glendale's city limits, with authority to be sued in its own name.  Glendale's governing authority consists of city council, composed of five city council members (the "City Council"), one of whom also serves as the mayor.  The City Council makes policy decisions for Glendale, including decisions regarding the use of public lands.

10.  At all relevant times hereto, defendant Ochoa has been the duly appointed City Manager of Glendale with supervisorial responsibility over the day-to-day administration of Glendale's various departments and staff, including but not limited to Glendale's Department of Community Services and Parks, Department of Public Works, Department of Community Development, and Department of Management Services; these departments in one or another manner are involved in the management and operation of Central Park and/or the Public Monument.  Ochoa effectively acts as, and is publicly held out to operate as, Glendale's Chief Executive Officer.  At all relevant times with respect to the Public Monument, Ochoa acted under color of state law and with the power and authority granted to him by the State of California and Glendale to deprive Plaintiffs of their federal constitutional rights, for which Plaintiffs seek injunctive and declaratory relief.

## FACTUAL BACKGROUND

### Glendale's Public Monument

11. At a Special Meeting on July 9, 2013, the City Council approved the installation of the Public Monument, described as "a Korean Sister City 'Comfort Woman' Peace Monument," on a substantial portion of public land immediately adjacent to the Adult Recreation Center Plaza in Central Park. The Public Monument was unveiled 21 days later, on July 30, 2013. The Public Monument is a 1,100-pound bronze statue of a young girl in Korean dress sitting next to an empty chair with a bird perched on her shoulder. Integral to and alongside the statue is a permanent bronze plaque that reads:

> I was a sex slave of Japanese military
> - Torn hair symbolizes the girl being snatched from her home by the Imperial Japanese Army.
> - Tight fists represent the girl's firm resolve for a deliverance of justice.
> - Bare and unsettled feet represent having been abandoned by the cold and unsympathetic world.
> - Bird on the girl's shoulder symbolizes a bond between us and the deceased victims.
> - Empty chair symbolizes survivors who are dying of old age without having yet witnessed justice.
> - Shadow of the girl is that of an old grandma, symbolizing passage of time spent in silence.
> - Butterfly in shadow represents hope that victims may resurrect one day to receive their apology.
>
> Peace Monument
>
> In memory of more than 200,000 Asian and Dutch women who were removed from their homes in Korea,

> China, Taiwan, Japan, the Philippines, Thailand, Vietnam, Malaysia, East Timor and Indonesia, to be coerced into sexual slavery by the Imperial Armed Forces of Japan between 1932 and 1945.
>
> And in celebration of proclamation of "Comfort Women Day" by the City of Glendale on July 30, 2012, and of passing of House Resolution 121 by the United States Congress on July 30, 2007, urging the Japanese Government to accept historical responsibility for these crimes.
>
> It is our sincere hope that these unconscionable violations of human rights shall never recur.
>
> July 30, 2013.

12. No other monuments are present in this area of Central Park and, upon information and belief, no other permanent markers may be placed there without approval of the City Council.

13. Glendale exercises exclusive custody and control of Central Park and the Public Monument, and upon information and belief, provides all necessary maintenance services for the Public Monument.

**The Historical Background Of The Debate Concerning Comfort Women**

14. During World War II and the decade leading up to it, an unknown number of women from Japan, Korea, China, and a number of nations in Southeast Asia, were recruited, employed, and/or otherwise acted as sexual partners for troops of the Japanese Empire in various parts of the Pacific Theater of war. These

women are often referred to as comfort women, a loose translation of the Japanese word for prostitute.

15. Beginning in the 1980s, a dispute arose between South Korea and the government of Japan concerning the hardships experienced by Korean comfort women and whether the Japanese government forcefully recruited comfort women.

16. Officials of the Japanese government assert that the Japanese military and Japanese Imperial government were not responsible for or directly involved in the recruitment of comfort women, and that private firms and individuals undertook the recruitment.

17. Other governments, including that of South Korea, claim that comfort women were recruited by and/or forced into sexual slavery by the Imperial Japanese government and/or officials of the Japanese military.

18. The debate concerning historic responsibility for the comfort women camps has been a significant and ongoing source of tension in recent decades between Japan and South Korea, both of which are critical American allies. Disagreements concerning responsibility for comfort women are a major impediment to improved present-day relations between Japan and South Korea, which are less than cordial.

**Efforts By Japan and South Korea To Address The Dispute**

19. After some years of controversy regarding the Japanese Imperial Government's alleged involvement with comfort women, in 1995 Japan established the Asian Women's Fund to distribute compensation to former comfort women in South Korea, the Philippines, Taiwan, the Netherlands, and Indonesia, and to provide them with letters of apology from the Prime Minister of Japan.

20. Nonetheless, several governments, including the government of South Korea, have continued to demand that Japan take additional steps to redress grievances relating to comfort women.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
708340890

21. The Japanese government asserts that all World War II-related claims against Japan, including those related to comfort women, were resolved by the Treaty of Peace signed in San Francisco by Japan, the United States, and 47 other allied nations in 1951 (the "Treaty of San Francisco"), the Treaty on Basic Relations between Japan and the Republic of Korea dated June 22, 1965, and/or the Agreement on the Settlement of Problems Concerning Property and Claims and on Economic Co-operation between Japan and the Republic of Korea also dated June 22, 1965 (the "Settlement Agreement").

22. Article 4(a) of the Treaty of San Francisco provides that claims of Korean and Chinese nationals relating to Japan's wartime conduct, including issues related to comfort women, are to be addressed through government-to-government negotiations between Japan and each of those countries.

23. Article 2(1) of the Settlement Agreement provides that the "problem concerning property, rights and interests of the two Contracting Parties [*i.e.,* Japan and South Korea] and their nationals (including juridical persons) and concerning claims between the Contracting Parties and their nationals . . . is settled completely and finally."

24. In December 2011, Japanese Prime Minister Yoshihiko Noda and South Korean President Lee Myung-bak held talks in Kyoto, Japan in an effort to improve bilateral relations between the two neighboring countries. The discussions terminated when President Lee pressed Prime Minister Noda to take additional responsibility for Korean comfort women. Plaintiffs are informed and believe that no further discussions between Japan and South Korea have since taken place.

### Glendale's Installation Of The Public Monument

25. Glendale has established a Glendale Sister Cities program to initiate ongoing communication and "promote[] interest and good will" between and among Glendale and its Sister Cities. As of March 2009, Glendale had six Sister

City partnerships: Higashiosaka, Japan; Hiroshima, Japan; Tlaquepaque, Mexico; Rosarito, Mexico; Ghapan, Armenia; and Goseong City, the Republic of Korea.

26. On September 6, 2011, the City Council instructed Glendale's Community Services and Parks staff to explore the possibility of dedicating a portion of public land within Glendale for acceptance and installation of memorials, monuments, and/or artifacts representative of Glendale's sister city partners.

27. On March 26, 2013, the City Council voted to dedicate a plot of public land within Central Park and adjacent to the Adult Recreation Center Plaza for the purpose of sister city-related monuments and memorials.

28. In the spring and summer of 2013, a proposal was made to place a statue in Central Park dedicated to comfort women. During that period, the City Council received hundreds of letters and emails in opposition to the installation of the monument, almost entirely from residents and interested persons of Japanese ancestry.

29. At a July 9, 2013 Special Meeting the City Council considered and approved a motion to install the Public Monument, described as a "Korean Sister City 'Comfort Women' Peace Monument," on public land within Central Park. The report recommending approval of the installation of the Public Monument, submitted to the City Council in conjunction with the motion, included a schematic diagram depicting the proposed statue and its location. The inclusion of the motion to approve installation of the Public Monument in the Special Meeting agenda was submitted to and approved by Ochoa.

30. The schematic diagram of the proposed statue did not include any mention of, or reference to, the text of the plaque that currently is part of the Public Monument. During the Special Meeting, City Council Member Ara Najarian asked Glendale Community Relations Coordinator Dan Bell whether the statue would be accompanied by a plaque and, if so, its inscription. Mr. Bell advised the

City Council that the plaque would say that it was "commemorating and in honor of the comfort women." Mr. Bell made no mention of the text of the plaque that ultimately was installed as part of the Public Monument.

31. During the Special Meeting, numerous individuals, including Japanese-Americans, publicly opposed and condemned the proposed installation of the statue, arguing that the comfort women issue is a matter of current diplomatic communications between South Korea and Japan, and the disputed view advanced by the South Korean government on comfort women.

32. Notwithstanding the numerous objections voiced at the Special Meeting, the City Council approved the installation of the "Korean Sister City 'Comfort Women' Peace Monument" "as shown and described in the Report to Council dated July 9, 2013" by a vote of 4 to 1. Glendale Mayor Dave Weaver, who voted against installation of the Public Monument, later explained in a letter to Yoshikazu Noda, Mayor of Higashiosaka, Japan (a Glendale sister city) that the dispute over comfort women "is an international one between Japan and South Korea and the City of Glendale should not be involved on either side."

33. Three weeks after the City Council's approval, on July 30, 2013, the 1,100 pound bronze Public Monument was unveiled in Central Park. As described above, the statue was accompanied by a plaque accusing the Japanese government of "coerc[ing]" more than 200,000 women "into sexual slavery," and "urging the Japanese Government to accept historical responsibility for these crimes," which it labels an "unconscionable violations of human rights." The City Council never voted to approve the language included on the plaque.

34. Following the Public Monument's installation, at the July 30, 2013 Meeting of the City Council, Glendale City Council Member Laura Friedman commented: "We really put the city of Glendale on the international map today by doing this."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

708340890

35. The installation of the Public Monument prompted opponents of the Public Monument to commence a petition to compel its removal. The petition, posted on President Barack Obama's website "We The People" in late 2013, quickly received more than 108,000 signatures.

**The Japanese Government's Reaction To The Public Monument**

36. Glendale's decision to install the Public Monument has elicited numerous unfavorable reactions from the Japanese government.

37. On July 24, 2013, Kuni Sato, the press secretary of the Japanese Ministry of Foreign Affairs, expressed Japan's official displeasure, remarking that installation of the Public Monument "does not coincide with our understanding" of the comfort women dispute.

38. On July 25, 2013, Yoshikazu Noda, the Mayor of Glendale's sister city, Higashiosaka, Japan, advised the City Council that the installation of the Public Monument was "an extremely deplorable situation and the people of Higashiosaka are hurt at a decision made by [Glendale] city to install a comfort woman monument."

39. On July 31, 2013, Kenichiro Sasae, Japanese Ambassador to the United States, declared that Glendale's action is "irreconcilable" with the position of the Government of Japan and is "highly regrettable."

40. On July 31, 2013, Mr. Yoshihide Suga, Japan's Chief Cabinet Secretary, described Glendale's decision to install the Public Monument as "extremely regrettable." He added that Glendale's action "conflicts with the [Japanese] government's view that the issue of the comfort women should not be part of any political or diplomatic agenda."

41. On August 13, 2013, Japanese Prime Minister Shinzo Abe stated that he was "extremely dissatisfied" with the installation of the Public Monument.

42. On January 16, 2014, after being denied a request to meet with Glendale's Mayor and City Council, an association of 321 local Japanese

government legislators submitted an official letter to Glendale, protesting the Public Monument's installation "in the strongest terms" and requesting "that the statue be removed immediately." The letter advised Glendale that "the distorted view of history that the statue represents . . . will surely jeopardize world peace and the possibility of a bright future for our children."

### The Executive Branch's Foreign Policy Position On Comfort Women

43. The Executive Branch of the United States, which has primary authority over the direction and conduct of U.S. foreign affairs, consistently has sought to avoid having the United States become embroiled in the contentious historical debate concerning comfort women between its two most important East Asian allies.

44. For example, on May 8, 2001, the United States filed a Statement of Interest in connection with a lawsuit brought by 15 former comfort women against Japan entitled *Joo v. Japan*, United States District Court for the District of Columbia, Case No. 1:00-cv-02233-HHK. That Statement of Interest warned that addressing the comfort women issue in the United States could disrupt Japan's "delicate" relations with China and Korea, thereby creating "serious implications for stability in the region."

45. Based upon the Statement of Interest, the United States Court of Appeal for the District of Columbia Circuit dismissed the *Joo* case as presenting nonjusticiable political questions, holding that "choosing between the interests of two foreign states . . . would adversely affect the foreign relations of the United States."

46. The United States continues to encourage resolution of the comfort women issue between Japan and its neighbors through government-to-government negotiations. During a January 7, 2013 press briefing, White House Spokesperson Victoria Nuland reported that the Administration "continue[s] to hope that the countries in the region can work together to resolve their concerns over historical

issues in an amicable way and through dialogue. As you know, we have no closer ally than Japan. We want to see the new Japanese Government, the new South Korean Government, all of the countries in Northeast Asia working together and solving any outstanding issues, whether they are territorial, whether they're historic, through dialogue."

47. During a trip to Seoul, South Korea in February 2014, U.S. Secretary of State John Kerry said: "It is up to Japan and [South Korea] to put history behind them and move the relationship forward. And it is critical at the same time that we maintain robust trilateral cooperation." "We urge our friends in Japan and South Korea, we urge both of them to work with us together to find a way forward to help resolve the deeply felt historic differences that still have meaning today . . . .We will continue to encourage both allies to find mutually acceptable approaches to legacy issues from the past."

48. In February 2014, Daniel Russel, the U.S. Assistant Secretary of State for East Asian and Pacific Affairs, commented that the U.S.'s position on the comfort women issue is to continue efforts to help manage "sensitive historical legacy problems in a way that contributes to healing and forgiveness in [] conversations in Japan and elsewhere in the region."

**The Public Monument Threatens Irreparable Injury to Plaintiffs**

49. Despite vocal domestic and international public protest, Glendale persisted in installing the Public Monument, forcing Plaintiffs to bring this action.

50. Allowing the Public Monument to remain in place in Glendale's Central Park threatens irreparable injury to Gingery, Mera, GAHT-US, and its members. As a longtime resident of Glendale with active involvement in Glendale's Sister City Program, the presence of the Public Monument within the designated Sister City area of Glendale's Central Park has turned visiting Central Park into a highly offensive endeavor, effectively denying Gingery full enjoyment of the Park's benefits.

51. The presence of the Public Monument has had a similar impact on GAHT-US's members, including Mera, who avoid using and benefitting from Glendale's Central Park.

52. Plaintiffs have no adequate remedy at law to address the foregoing injuries.

53. If the Public Monument is removed, Plaintiffs will again make use of Glendale's Central Park and its Adult Recreation Center.

54. An actual controversy has arisen and now exists between Plaintiffs and Defendants.

55. Plaintiffs contend that installation of the Public Monument unconstitutionally intrudes on the Executive Branch's authority to conduct American foreign policy, and that Glendale's installation of the Public Monument violates Glendale's Municipal Code.

56. Plaintiffs are informed and believe that Defendants disagree with Plaintiffs' contentions as set forth in the prior paragraph.

57. A justiciable controversy therefore exists between Plaintiffs and Defendants and a judicial declaration is necessary and appropriate at this time in order to determine the legality of Glendale's installation of the Public Monument.

## FIRST CLAIM FOR RELIEF

### (Unconstitutional Interference With Foreign Affairs Power)

58. Plaintiffs repeat and incorporate the allegations of Paragraph 1 through 57 herein.

59. The Public Monument interferes with the Executive Branch's primary authority to conduct foreign relations by disrupting federal foreign policy as to the resolution of the historical debate concerning comfort women. The Public Monument also violates the Supremacy Clause.

60. The Executive Branch's authority in the field of foreign affairs is violated by state or local actions that have more than an incidental or indirect effect

on, or that have the potential for disruption or embarrassment of, United States foreign policy.

61. Glendale's installation of the Public Monument has a direct impact on U.S. foreign policy that is neither incidental nor indirect. By installing the Public Monument, Glendale has taken a position in the contentious and politically-sensitive international debate concerning the proper historical treatment of the former comfort women. More specifically, given the inflammatory language used in the plaque that is prominently featured alongside the statue, Glendale has taken a position at odds with the expressed position of the Japanese government.

62. The Public Monument is inconsistent with the dual foreign policy objectives promulgated by the Executive Branch on this controversial issue: (1) avoid taking sides in this sensitive historical and political debate between the United States' two most important East Asian allies; and (2) encouraging a resolution to the current diplomatic impasse between the two countries through further government-to-government negotiations.

63. As the reactions from the highest echelons of the Japanese government make clear, Glendale's actions have great potential for disrupting the delicate diplomatic line struck by the Executive Branch on this contentious issue. The Public Monument thus threatens to undermine the U.S. government's foreign relations with a critical Asian ally and, more generally, to destabilize already strained diplomatic relations in this important region of the world.

64. Glendale's action also takes a position on a matter of foreign policy with no claim to be addressing a traditional state responsibility.

65. The actions of Glendale and the City Council in approving and installing the Public Monument are beyond its authority, in violation of the U.S. Constitution's foreign affairs power and the Supremacy Clause, and the Public Monument therefore must be removed.

66. The actions of defendant Ochoa in approving and submitting the proposal to install the Public Monument on public land, and in including a motion to approve the installation in the Special Meeting Agenda, are beyond his authority and unconstitutional, and the Public Monument therefore must be removed.

## SECOND CLAIM FOR RELIEF

### (**Violation of the Glendale Municipal Code**)

67. Plaintiffs repeat and incorporate the allegations in Paragraph 1 through 66 herein.

68. Glendale Municipal Code Section 2.04.140 provides: "In all matters and things not otherwise provided for in this chapter, the proceedings of the council shall be governed under Robert's Rules of Order, revised copy, 1952 edition." Pursuant to Robert's Rules of Order, to introduce a new piece of business or propose a decision or action, a motion must be made by a group member. A second motion must then also be made. And after limited discussion, the group then votes on the motion. A majority vote is required for the motion to pass.

69. The Public Monument was not properly approved by the City Council pursuant to Glendale Municipal Code Section 2.04.140. An integral part of the Public Monument—the plaque that specifically attributes responsibility for, *inter alia*, "snatching [women] from their homes" and "coerc[ing them] into sexual slavery" to Japan—was neither proposed to the City Council nor made the subject of a motion to the City Council, and was not approved by it, as required. In fact, the proposed language presented to the Council never mentioned Japan at all, and the City Council was specifically advised that the inscription on the plaque would be different than the inscription ultimately used.

70. As a result, the installation of the monument violated the Glendale Municipal Code.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. That the Court declare Glendale's installation of the Public Monument unconstitutional and null and void;

2. That the Court preliminarily and permanently enjoin and compel defendants, and each of them, to remove the Public Monument from public property in Glendale, including but not limited to, any area in or adjacent to Central Park;

3. That the Court award Plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. For such other and further relief as the Court may deem just and proper.

Dated:  February 20, 2014

MAYER BROWN LLP
NEIL M. SOLTMAN
MATTHEW H. MARMOLEJO
RUTH ZADIKANY
REBECCA B. JOHNS


By:   s/ Neil M. Soltman
         Neil M. Soltman
Attorneys for Plaintiffs
MICHIKO SHIOTA GINGERY, KOICHI MERA, and GAHT-US CORPORATION