MAYER BROWN LLP
NEIL M. SOLTMAN (SBN 67617)
 nsoltman@mayerbrown.com
MATTHEW H. MARMOLEJO (SBN 242964)
 mmarmolejo@mayerbrown.com
RUTH ZADIKANY (SBN 260288)
 rzadikany@mayerbrown.com
REBECCA B. JOHNS (SBN 293989)
 rjohns@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MICHIKO SHIOTA GINGERY, an individual, et al.,

Plaintiffs,

v.

CITY OF GLENDALE, a municipal corporation,

Defendant.

Case No. 2:14-cv-1291-PA-(AJWx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF GLENDALE'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16**

Judge: Hon. Percy Anderson

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1
INTRODUCTION ............................................................................................... 1
ARGUMENT ....................................................................................................... 1
    I.    THE ANTI-SLAPP STATUTE DOES NOT APPLY TO THE FIRST CAUSE OF ACTION BECAUSE IT IS BROUGHT UNDER FEDERAL LAW ................................................................ 1
    II.    GLENDALE FAILS TO MEET ITS THRESHOLD BURDEN TO ESTABLISH THAT THE SECOND CAUSE OF ACTION INVOLVES CONSTITUTIONALLY PROTECTED SPEECH OR PETITIONING ........................................................................ 4
        A.    Application Of The Anti-SLAPP Statute Here Would Frustrate, Not Further, Its Purposes ........................................... 4
        B.    Glendale's Failure To Satisfy Section 425.16(e) Demonstrates The Lack Of An Act In Furtherance Of Speech Rights ................................................................................ 5
        C.    The Municipal Code Claims Arise From Glendale's Failure To Vote, Not From The Content Of Its Speech ............ 6
        D.    The Plaintiffs' Ability To Show A Likelihood Of Prevailing On The Merits Requires Denial Of The Motion To Strike ............................................................................ 7
    III.    BECAUSE GLENDALE'S ANTI-SLAPP MOTION IS FRIVOLOUS, IT IS RESPONSIBLE FOR PLAINTIFFS' ATTORNEY'S FEES ................................................................... 12
CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Ins. Ass'n v. Garamendi,*
    539 U.S. 396 (2003) ......................................................................................... 2

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ......................................................................... 2

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.,*
    448 F. Supp. 2d 1172 (C.D. Cal. 2006) ....................................................... 3, 7

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (2002) .................................................................................. 6, 7

*City of Pasadena v. Paine,*
    126 Cal. App. 2d 93 (1954) ............................................................................. 9

*Doe v. Gangland Prods., Inc.,*
    730 F.3d 946 (9th Cir. 2013) ....................................................................... 1, 3

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2009) ....................................................................... 1, 3

*In re Bah,*
    321 B.R. 41 (B.A.P. 9th Cir. 2005) ................................................................. 1

*In re Episcopal Church Cases,*
    45 Cal. 4th 467 (2009) .................................................................................... 7

*McKee v. Orange Unified Sch. Dist.,*
    110 Cal. App. 4th 1310 (2003) ..................................................................... 11

*Mindy's Cosmetics, Inc. v. Dakar,*
    611 F.3d 590 (9th Cir. 2010) ........................................................................... 8

*Moore v. Shaw,*
    10 Cal. App. 4th 182 (2004) ......................................................................... 12

*Nat'l Foreign Trade Council v. Natsios,*
    181 F.3d 38 (1st Cir. 1999) ............................................................................. 6

## TABLE OF AUTHORITIES

**Page(s)**

*Riley v. Hilton Hotels Corp.*,
    100 Cal. App. 4th 599 (2002).................................................................................11

*Santa Monica Rent Control Bd. v. Pearl St.*,
    109 Cal. App. 4th 1308 (2003).................................................................................7

*Shekhter v. Fin. Indem. Co.*,
    89 Cal. App. 4th 141 (2001).....................................................................................6

*U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton*,
    171 Cal. App. 4th 1617 (2009).................................................................................7

*United States ex rel. Newsham v. Lockheed Missiles & Space Co. Inc.*,
    190 F.3d 963 (9th Cir. 1999)....................................................................................2

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).............................................................................3, 4

**STATUTES**

28 U.S.C. § 1331..........................................................................................................3

42 U.S.C. § 1983..........................................................................................................2

Cal. Code Civ. Proc. § 425.16..............................................................................passim

Glendale Municipal Code § 2.04.140.......................................................................7, 8

Government Code § 36900 .......................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs brought this action against the City of Glendale to remedy Glendale's failure to abide by the Supremacy Clause of the United States Constitution as it relates to foreign policy, and to correct the city council's violation of its voting rules under the Municipal Code. Glendale seeks to have plaintiffs' claims dismissed under the California anti-SLAPP statute.

The anti-SLAPP statute, though, does not apply to federal claims brought in federal court. The Supremacy Clause claims in the first cause of action are therefore beyond the reach of the statute.

The Municipal Code claims in the second cause of action are not based on any constitutionally protected speech on the City's part. Plaintiffs claim that Glendale failed to follow the procedural voting rules it has adopted for its governance; no government entity has a First Amendment right to violate its own voting procedures. Moreover, the particular speech in which Glendale is engaging would be outside a city's limited speech rights even if Glendale had properly followed its Municipal Code. Glendale's anti-SLAPP Motion to Strike should therefore be denied.

## ARGUMENT

### I. THE ANTI-SLAPP STATUTE DOES NOT APPLY TO THE FIRST CAUSE OF ACTION BECAUSE IT IS BROUGHT UNDER FEDERAL LAW.

"[T]he anti-SLAPP statute," Cal. Code Civ. Proc. § 425.16, "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2009); *see Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3 (9th Cir. 2013) (same); *In re Bah*, 321 B.R. 41, 45-48 (B.A.P. 9th Cir. 2005) (anti-SLAPP statute does not apply to federal claims even when accompanied by pendent state law claims). Indeed, the only reason that the California anti-SLAPP statute ever

may apply in federal court is when it is treated as a substantive rule that a federal court must follow in diversity when the underlying cause of action arises under state law. *See Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, **sitting in diversity**, will do so as well.")[1]; *United States ex rel. Newsham v. Lockheed Missiles & Space Co. Inc.*, 190 F.3d 963, 971-72 (9th Cir. 1999) (applying the anti-SLAPP statute to "counterclaims **based on California state law**.").

The first cause of action alleges a federal claim under the Supremacy Clause of the U.S. Constitution and 42 U.S.C. § 1983. *See* Compl. ¶¶ 58-66 (claim for Glendale's infringement of the federal government's exclusive authority over foreign affairs and Supremacy Clause). Glendale's argument that a Supremacy Clause claim relating to foreign affairs preemption does not actually arise under federal law is squarely inconsistent with Supreme Court precedent: the Court held in favor of private litigants who sued to strike down a California statute on that precise ground. *See Am. Ins. Ass'n v. Garamendi,* 539 U.S. 396, 413 (2003) ("The principal argument for preemption made by petitioners and the United States as *amicus curiae* is that [the local act] interferes with foreign policy of the Executive Branch …. The major premises of the argument, at least, are beyond dispute."). Because the first cause of action is based on federal law, it is not subject to the anti-SLAPP special motion to strike, and Glendale's motion should be denied.

Glendale argues that the anti-SLAPP statute nonetheless applies here because "there is no actual federal right at issue." Mot. to Strike at 7. But this confuses the merits of the case with the threshold question of whether the anti-SLAPP statute applies. Whether plaintiffs' federal claims are sound is a matter for this Court to decide using generally applicable federal procedures; the anti-SLAPP statute can have no role to play in that analysis because, as noted, it applies only to

---

[1] All emphasis is added unless otherwise stated.

"**state law** claims." *Hilton,* 599 F.3d at 901. Whatever Glendale may think of plaintiffs' Supremacy Clause claims, they certainly are not "state law claims."

Glendale's argument is also inconsistent with the logic of the California anti-SLAPP statute, and not just of precedents such as *Hilton* and *Doe*. To conclude that a federal right does not exist and that the anti-SLAPP statute applies would force the Court to oversee a threshold debate concerning the merits of the federal law claim. But the burden shifting inherent in the anti-SLAPP statute requires that the defendant first prove that the claimed speech arises from protected activity. Only then may a court look to whether the plaintiff's claim has minimal merit. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). Forcing the court to examine the merits before evaluating whether a protected speech right exists turns the carefully crafted burden-shifting requirement of the SLAPP statute upside down.

Glendale next claims that California's policy goals in enacting the anti-SLAPP statute support its position. *See* Mot. to Strike at 8-11. The state's policy is besides the point in this Court. California is free to apply its own policy for claims brought under California law, thereby burdening its litigants and risking the chilling of state law litigation. But it has no right to impose those burdens and risks on federal claims litigated in federal courts. Allowing anti-SLAPP motions in that circumstance "would frustrate federal courts' interest in prescribing rules of procedure applicable to federal claims, and in uniformity of federal law." *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.,* 448 F. Supp. 2d 1172, 1181 (C.D. Cal. 2006). It "would permit state law to affect and alter the substance of federal claims in violation of the Supremacy Clause of the Constitution." *Ibid.*[2] California's policy choices in this regard affect only California claims.[3]

---

[2] Plaintiffs' desire to bring federal claims in federal court is not, as Glendale claims, "forum shopping." *See* Motion to Strike at 9. Federal claims belong in federal courts. *See* 28 U.S.C. § 1331.

[3] Application of SLAPP to federal claims would also destroy uniformity
(cont'd)

3

## II. GLENDALE FAILS TO MEET ITS THRESHOLD BURDEN TO ESTABLISH THAT THE SECOND CAUSE OF ACTION INVOLVES CONSTITUTIONALLY PROTECTED SPEECH OR PETITIONING.

The defendant in a SLAPP claim bears the initial burden of proving that the "suit **arises from an act in furtherance of** the defendant's rights of petition or free speech." *Vess,* 317 F.3d at 1110. Glendale fails to meet this burden.

### A. Application Of The Anti-SLAPP Statute Here Would Frustrate, Not Further, Its Purposes.

Anti-SLAPP legislation aims to protect citizens from governmental retaliation following the citizens' exercise of First Amendment rights. Cal. Code Civ. Proc. § 425.16(a) (noting "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the **constitutional rights of free speech and petition for the redress of grievances**." Anti-SLAPP legislation does not protect the rights of the government to be free from citizen complaints about the government's failure to adhere to its own procedures and rules. *See id.* § 425.16(b)(1) (the claim subject to a SLAPP motion must be "an act … in furtherance of the person's right of petition or free speech under the United States or California Constitution"). Yet Glendale's motion here seeks to turn these laudable legislative purposes into a tool for escaping its own failure to comply with the voting rules it set for itself. Failing to comply with the rules of voting by the City Council is not "an act … in furtherance of the person's [i.e., Glendale or the City Council's] right of petition or

---

within the circuit. Seven of the eleven jurisdictions within the circuit (covering every major population area) have their own, and differing, anti-SLAPP statutes. *See* Ariz. Rev. Stat. §§ 12-751–12-752 (2006); Cal. Code Civ. Proc. § 425.16, *et seq.*; Haw. Rev. Stat. § 634F-1–34F-4 (2002); Nev. Rev. Stat. §§ 25-21,241–25-21,245 (1994); Or. Rev. Stat. §§ 31.150 *et seq.* (2001); Wash. Rev. Code §§ 4.24.500–525 (2010); Guam Code Ann. tit. 7 §§ 17101–17109 (1998). Allowing identical **federal law** claims to be decided differently depending on the state or territory in which the particular District Court sits would impede the uniform administration of justice.

free speech under the United States or California Constitution." Application of the anti-SLAPP statute in these circumstances would warp, not further, the legislative purpose.

The government action challenged here—its willingness to ignore its only rules as to how to engage in legislative action—has nothing to do with the carefully circumscribed legislative categories covered by Section 425.16. And the challenge under the Municipal Code is to the procedures used to enact the ordinance, not to Glendale's speech or even Glendale's expressive conduct. The events here are beyond the scope and the purposes of the SLAPP statute.

### B. Glendale's Failure To Satisfy Section 425.16(e) Demonstrates The Lack Of An Act In Furtherance Of Speech Rights.

Glendale's Motion to Strike should be rejected because none of the criteria listed in Section 425.16(e)(1)–(4) are applicable.

Section 425.16(e)(1) refers to "any written or oral statement or writing made **before** a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." It thus relates to statements made **to** a government body (e.g., testimony or public commentary) and not to statements made (or not made) **by** a government body.

Likewise, Section 425.16(e)(2) refers to "any written or oral statement or writing **made in connection with an issue under consideration or review by** a legislative, executive, or judicial body, or any other official proceeding authorized by law." This again relates to statements made **by** citizens **to** the **government**, and not to the actual government action. Nor does it matter that "the Monument describes a resolution passed by the United States House of Representatives concerning the Comfort Women." Mot. to Strike at 4. This long-since passed congressional resolution was not "an issue under consideration or review" by Glendale.

Section 425.16(e)(3) covers "any written or oral statement or writing made

in a place open to the public or a public forum in connection with an issue of public interest." But the placing of the Monument is not a "written or oral statement or writing." And if the City Council did not approve the plaque on the Monument, then the speech contained on it—apparently unknown when the City Council acted on July 9, 2013—cannot be said to be the speech of the City. *See* Cal. Code Civ. Proc. § 425.16(b)(1); *Shekhter v. Fin. Indem. Co.*, 89 Cal. App. 4th 141, 152 (2001) ("[the statute] requires that the defendant … be the individual who is or was being sued for exercise of 'that person's right of petition or free expression'").

Finally, Section 425.16(e)(4) covers "conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." But the Municipal Code claim alleges that Glendale **failed** to comply with its own law, and thus failed to lawfully speak. And even were that not so, municipalities may have the right to express themselves—or not—from time to time, but they have no right to speak in such a manner as to interfere with foreign affairs. Nothing in the Supreme Court's precedents related to state interference with foreign relations "suggests that a state government's First Amendment interests, **if any**, should weigh into a consideration of whether a state has impermissibly interfered with the federal government's foreign affairs power." *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 62 (1st Cir. 1999) (holding that Massachusetts' Burma Law is not shielded by the First Amendment), *aff'd on other grounds,* 530 U.S. 263 (2000).

### C. The Municipal Code Claims Arise From Glendale's Failure To Vote, Not From The Content Of Its Speech.

The anti-SLAPP statute is limited to those causes of action that arise from acts in furtherance of free speech. Cal. Code Civ. Proc. § 425.16(b)(1); *see City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002) (action that does not arise from protected activity is not subject to an anti-SLAPP motion). The statute does not

apply "where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint." *U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton*, 171 Cal. App. 4th 1617, 1625 (2009). In determining whether activity is collateral or incidental, the Court looks to the gravamen or principal thrust of the claim. *City of Cotati*, 29 Cal. 4th at 80; *Bulletin Displays, LLC*, 448 F. Supp. 2d at 1187.

The gravamen of the second cause of action is that the Monument's plaque "was not properly approved by the City Council pursuant to City Municipal Code Section 2.04.140." Compl. ¶ 69. That focuses on the Council's violation of its own rules, not on the expressive content of the Monument that the Council sought to approve. Even if "protected activity may lurk in the background … [that] does not transform a … dispute into a SLAPP suit." *In re Episcopal Church Cases*, 45 Cal. 4th 467, 478 (2009). The same procedural violation would have occurred if the proposed action dealt with the timing of traffic signals or the schedule for school holidays. *See Santa Monica Rent Control Bd. v. Pearl St.*, 109 Cal. App. 4th 1308, 1318 (2003) (suit not based on protected activity when brought to compel compliance with the law, and not in retaliation for submission of documents that followed the alleged violation of the law.).

The Municipal Code claim is rooted in the Council's failure to properly vote, not on its expression. Glendale thus fails to carry the burden of establishing that a cause of action alleging the violation of an ordinance arises from the right of petition or free speech. The motion to strike should be denied. *See* Cal. Code Civ. Proc. § 425.16(b)(1).

### D. The Plaintiffs' Ability To Show A Likelihood Of Prevailing On The Merits Requires Denial Of The Motion To Strike.

Even if Glendale could meet its burden of demonstrating that the anti-SLAPP statute applies to the second claim, a special motion to strike must be denied if the claim has "minimal merit." *Mindy's Cosmetics, Inc. v. Dakar*, 611

F.3d 590, 598 (9th Cir. 2010). To justify denying the motion to strike, plaintiffs need only state a "legally sufficient claim." *Id.* at 599.

As common sense dictates, and the Council's actions reflect, to approve City business the Council must know of and vote on a proposal. The City Council here felt the need to review and approve a detailed schematic of the Monument (which excluded mention of any plaque). *See* Cruz Decl. Exh. A at 5-10. The Council inquired if there would be a plaque, and what it would say. *See* Compl., ¶¶ 30, 69. It recognized that it must vote on a monument that would be placed in a public park, and that the details, including any accompanying plaque, needed to be acknowledged and approved before being placed on City property. The failure to so approve the plaque constitutes a violation of the Municipal Code.

Glendale argues that it need not adhere to Robert's Rules of Order. *See* Mot. to Strike at 16:10-25. But the City Charter expressly adopts Robert's Rules of Order as the procedural rules for lawmaking in Glendale. *See* Compl., ¶ 68; Glendale Municipal Code § 2.04.140 ("In all matters and things not otherwise provided for in this chapter, the proceedings of the council **shall be governed under Robert's Rules of Order**, revised copy, 1952 edition."). Because Robert's Rules of Order is the only mechanism provided, by ordinance or otherwise, to approve city business, it must be followed for the Council to validly vote on a proposal. Surely the Council may not choose to disregard Municipal Code § 2.04.140 on a whim. And even if Glendale need not use Robert's Rules in particular, it does need to vote; voting has meaning only if conducted in accordance with a set of rules known in advance setting out how to determine winners and losers. Glendale failed to vote in accordance with any pre-established rules because it failed to vote.

The very authority that Glendale cites supports the common-sense contention that a municipal government should follow its established voting rules. In *City of Pasadena v. Paine*, 126 Cal. App. 2d 93, 96 (1954), the court noted that

8
OPPOSITION TO SPECIAL MOTION TO STRIKE; CASE NO. 2:14-CV-1291-PA-(AJWX)

the failure to conform to parliamentary procedure "will not invalidate its action **when the requisite number of members have agreed to the particular measure**." It is the established voting procedure—here, Robert's Rules—that defines what it takes for the members to properly agree to a measure. If the Rules are not followed, Glendale has no lawful means by which to vote on proposals, and provides no "requisite number of members" that must so vote. Indeed, unlike in *Paine*, the plaintiffs do not wish to invalidate an action that has been agreed to by council members. Rather, plaintiffs merely contend that the council members never approved the action in the first place, by majority vote or otherwise, and that failure violates the Municipal Code.

And *Paine's* reasoning further supports this contention. The purpose of parliamentary procedure is to "provide assurance that those whose duty to vote thereon may have some knowledge of its **scope and terms** before they cast their votes." *Id.* at 96-97. In *Paine*, the voting members were fully informed about the subject on which they were to vote, and had themselves visited the site involved in the vote. *Ibid.* Here, however, the council members never knew what the language of the plaque would say; when they cast their votes on the statue, they were thus not casting informed votes on a definite future plaque. Because the plaque was not presented to the council members for a vote, and because the council never knew what the plaque would say, it was never lawfully approved.

Glendale nonetheless claims that "a measure passed in compliance with the charter will not be void simply because in its passage one of the parliamentary rules was violated." Mot. to Strike at 16. But, again, there is no means provided in Glendale's own charter by which a council may pass any measure other than by compliance with Robert's Rules. Since the City Council did not comply with Robert's Rules, it was never properly approved in accordance with the Municipal Code.

Glendale's claim that the City need not vote on the plaque likewise fails.

Glendale first argues that the Council has the power to accept gifts, but that there is no requirement to review all the details of a gift prior to its acceptance. *See* Mot. to Strike at 17. But the exceptionally detailed schematic provided to the Council for its vote on the statue tells a different story. *See* Cruz Decl. Exh. A at 10. The schematic includes the materials to be used for both the figure and the slab on which it sits, the precise dimensions of each piece of the statue, the exact location where it now stands, and a photographic rendering of every last detail demonstrating what the monument being voted on would look like at the site.

If the Monument had to be presented for approval to the City Council with such specificity, surely a plaque and its inscription that would ultimately occupy a very large portion of the Monument–about a third of its base–would require similar scrutiny. And that is especially so given that the inscription provides the main part of the message to the great majority of passersby who otherwise would not grasp the symbolism of the Monument.

Second, Glendale urges that the language on the Monument was "yet to be determined" at the July 9 vote on the statue and that the "Council voted to accept the Monument even though it was advised that the language had not been finalized." Mot. to Strike at 17. That is not quite accurate. At the July 9 meeting, when City Community Relations Coordinator Dan Bell stated that the plaque would say "commemorating … in honor of the comfort women," he never claimed that the language was tentative, and the Council never gave any indication that it intended to approve whatever potential language the donors may later choose without further City approval. Video Recording: City Council Meeting – 3 pm – July 9, 2013, http://City.granicus.com/MediaPlayer.php?view_id=12& clip_id=4249. In fact, the Council never claimed to be approving the plaque on July 9 at all; it merely voted to approve the proposal presented to it, and that proposal included no mention of any plaque. *See* Cruz Decl. Exh. A at 5-10.

Third, Glendale argues that the Council's members knew the plaque would

have language "'commemorating and in honor of comfort women' ... which is precisely what it does." Mot. to Strike at 17. But the actual plaque bears a substantially different and more condemnatory inscription, one directed to Japan and not solely in honor of comfort women. *See* Compl. ¶ 11. This language, which goes beyond merely commemorating and honoring the comfort women, was never approved by the Council from the information its members were provided by the proposal and by Mr. Bell. Because Glendale was not told what the plaque would ultimately say, and because the only information that the Council did have proved to be incorrect (i.e., that the inscription would honor and commemorate comfort women instead of focusing on Japan), the Monument as it stands was not voted on by the Council in accordance with the Municipal Code.

Finally, Glendale argues that neither Mera nor GAHT-US may challenge the Monument because they are not Glendale residents. But the Municipal Code claim challenges only Glendale's violation of its Municipal Code in failing to vote on the plaque. And "violation of a city ordinance may be prosecuted by city authorities in the name of the people of the State of California, **or redressed by civil action**." Government Code § 36900. It follows that a civil action may likewise be brought by California residents as well. *See Riley v. Hilton Hotels Corp.*, 100 Cal. App. 4th 599, 607 (2002) (private right of action exists for violations of a municipal code under Section 36900); *see also McKee v. Orange Unified Sch. Dist.*, 110 Cal. App. 4th 1310, 1320 (2003) (citizens of California, and not just county resident taxpayers, have right to sue for violations of the Brown Act, an act regulating meetings of local government agencies). Residents of surrounding areas are affected by a city's failure to abide by its ordinances and municipal code; thus, to allow residents beyond the city limits of Glendale to bring an action is both consistent with the Government Code and with principles of allowing those affected by acts to seek redress.

### III. BECAUSE GLENDALE'S ANTI-SLAPP MOTION IS FRIVOLOUS, IT IS RESPONSIBLE FOR PLAINTIFFS' ATTORNEY'S FEES.

Pursuant to Section 425.16(c), "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court **shall** award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." (emphasis added.) A motion is frivolous where "any reasonable attorney" would agree the motion is not meritorious. *Moore v. Shaw*, 10 Cal. App. 4th 182, 199 (2004).

Here, Glendale asserts an anti-SLAPP claim that would require the Court to ignore clear Ninth Circuit precedent holding that anti-SLAPP motions do not apply to federal claims. Any reasonable attorney would recognize that a special motion to strike that requires a federal district court to fail to comply with clear and well-established Ninth Circuit precedent lacks merit. That portion of the motion thus qualifies as frivolous, and attorney's fees should be awarded to the plaintiffs.

### CONCLUSION

For the reasons mentioned above, plaintiffs respectfully request that this Court deny Glendale's Special Motion to Strike and award fees pursuant to Section 425.16(c) of the California Code of Civil Procedure.

Dated: April 28, 2014

MAYER BROWN LLP
NEIL M. SOLTMAN
MATTHEW H. MARMOLEJO
RUTH ZADIKANY
REBECCA B. JOHNS

By:   s/ Neil M. Soltman
       Neil M. Soltman
       Attorneys for Plaintiffs