Michael J. Garcia, City Attorney, SBN 192848
Ann M. Maurer, Chief Assistant City Attorney, SBN 179649
AMaurer@glendaleca.gov
Miah Yun, Assistant City Attorney, SBN 218808
MYun@glendaleca.gov
Andrew Rawcliffe, Deputy City Attorney, SBN 259224
ARawcliffe@glendaleca.gov
613 E. Broadway, Suite 220
Glendale, CA  91206
Telephone:  (818) 548-2080
Facsimile:  (818) 547-3402

Bradley H. Ellis, SBN 110467
bellis@sidley.com
Frank J. Broccolo, SBN 210711
fbroccolo@sidley.com
Christopher S. Munsey, SBN 267061
cmunsey@sidley.com
Laura L. Richardson, SBN 288954
laura.richardson@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Attorneys for Defendant
CITY OF GLENDALE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHIKO SHIOTA GINGERY, an individual, KOICHI MERA, an individual, GAHT-US Corporation, a California non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF GLENDALE, a municipal corporation, SCOTT OCHOA, in his capacity as Glendale City Manager,<br><br>Defendants. | Case No. 2:14-cv-1291-PA-AJW<br><br>Assigned to: Hon. Percy Anderson<br><br>**DEFENDANT CITY OF GLENDALE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6), OR TO STRIKE PURSUANT TO RULE 12(F)**<br><br>Date:     N/A<br>Time:    N/A<br>Place:    N/A |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT......................................................................................................2

    A. Plaintiffs Do Not Have Standing to Bring Their Claims .......................2

    B. Plaintiffs' First Cause of Action Either Presents a Nonjusticiable Political Question or Fails as a Matter of Law ......................................4

    C. Glendale's Rights of Speech and Petition Preclude Plaintiffs' Claims for Relief ........................................................................................5

        1. The First Amendment Protects Glendale's Installation of the Monument ..................................................................................5

        2. There Is No Question That Cities Have Speech Rights, Regardless as To Whether They Are Grounded in the First Amendment ..................................................................................6

        3. Plaintiffs Cannot Identify Any Authority That Would Permit the Foreign Affairs Powers of the Executive To Trump the Free Speech Rights of Local Governments ..............7

        4. Plaintiffs Do Not Dispute That Permitting the Foreign Affairs Power To Restrain State and Local Government Speech Would Lead To Extreme and Absurd Results ...............8

    D. The Monument Also Cannot Be "Preempted" Under The Foreign Affairs Powers Because It Is Consistent With U.S. Foreign Policy........................................................................................................9

    E. Plaintiffs' Second Cause of Action Should Also Be Dismissed.........11

    F. The References to Sections 1983 and 1988 In the Complaint Should Be Stricken..................................................................................11

    G. The Complaint Should Be Dismissed With Prejudice........................12

III. CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alameda Newspapers, Inc. v. City of Oakland*,
  95 F.3d 1406 (9th Cir. 1996) ....................................................................... 7, 9, 11

*American Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003) .............................................................................................. 9

*American-Arab Ant-Discrimination Comm. v. Reno*,
  70 F.3d 1045 (9th Cir. 1995) ................................................................................ 1

*Barnes-Wallace v. City of San Diego*,
  530 F.3d 776 (9th Cir. 2008) ............................................................................ 3, 4

*Buono v. Norton*,
  371 F.3d 543 (9th Cir. 2004) ................................................................................ 4

*Catholic League for Religious and Civil Rights v. City and County of San Francisco*,
  624 F.3d 1043 (9th Cir. 2010) .............................................................................. 3

*Citizens United v. Federal Election Comm'n*,
  558 U.S. 310 (2010) .............................................................................................. 6

*County of Allegheny v. ACLU Greater Pittsburgh Chapter*,
  492 U.S. 573 (1989) .............................................................................................. 3

*Deutsch v. Turner Corp.*,
  324 F.3d 692 (9th Cir. 2003) ................................................................................ 5

*Doan v. Singh*,
  1:13-CV-00531-LJO-SMS, 2013 WL 3166338 (E.D. Cal. June 20, 2013) ....... 12

*Farley v. Healey*,
  67 Cal. 2d 325 (1967) .......................................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) .............................................................................................. 4

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) .......................................................................................... 8, 10

*Int'l Ass'n. of Machinists & Aerospace Workers (IAM) v. Organization of Petroleum Exporting Countries*,
   649 F.2d 1354 (9th Cir. 1981) .............................................................................. 10

*Japan Line, Ltd. v. Los Angeles County*,
   441 U.S. 434 (1979) ............................................................................................. 10

*Los Angeles County Bar Ass'n v. Eu*,
   979 F.2d 697 (9th Cir. 1992) ................................................................................. 5

*Movsesian v. Victoria Versicherung AG*,
   670 F.3d 1067 (9th Cir. 2012) .............................................................................. 11

*MultiCare Health Sys. v. Lexington Ins. Co.*,
   No. 12-35436, 539 Fed.Appx. 768 (9th Cir. Aug. 28, 2013) ............................... 12

*Nat'l Ass'n for Advancement of Colored People v. Horne*,
   No. CV13-01079-PHX-DGC, 2013 WL 5519514 (D. Ariz. Oct. 3, 2013) ..... 3, 4

*New York Times Co. v. City of New York Comm'n on Human Rights*,
   41 N.Y.2d 345 (1977) .......................................................................................... 10

*Ove v. Gwinn*,
   264 F.3d 817 (9th Cir. 2001) ............................................................................... 11

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ....................................................................................... 6, 7, 9

*Red River Freethinkers v. City of Fargo*,
   679 F.3d 1015 (8th Cir. 2012) ............................................................................... 4

*Trunk v. City of San Diego*,
   568 F. Supp. 2d 1199 (S.D. Cal. 2008) ................................................................. 3

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
   132 S.Ct. 1421 (2012) .......................................................................................... 10

*Zschernig v. Miller*,
   389 U.S. 429 (1968) ............................................................................................. 11

**STATUTES**

28 U.S.C. § 1367(c)(3) ............................................................................................. 11

42 U.S.C. § 1983 ........................................................................................... 12

42 U.S.C. § 1988 ........................................................................................... 12

**RULES**

Federal Rule of Civil Procedure 12 ........................................................................ 12

**OTHER AUTHORITIES**

U.S. Const. amend. I .......................................................................................... 5, 6

## I. INTRODUCTION

The Court should dismiss Plaintiffs' Complaint pursuant to Glendale's Special Motion to Strike. However, even if the Court were to determine that the anti-SLAPP statute does not apply to one or both of Plaintiffs' claims, Defendant City of Glendale ("Glendale") demonstrated in its Motion to Dismiss that the Complaint must be dismissed for additional independent reasons. Plaintiffs' opposition is primarily noteworthy for how much it concedes. In spite of the Complaint's suggestion that the crimes committed against the Comfort Women are the subject of a "debate," Plaintiffs now concede that they do not "den[y] in any respect" the crimes committed against the Comfort Women. (MTD Opp., at 1:4-5.) Moreover, they now appear to concede that the message of the Glendale's monument honoring the Comfort Women (the "Monument") is fully consistent with U.S. policy on the issue. (MTD Opp., at 1 n.1.) They could hardly argue to the contrary, particularly in light of the fact that the President of the United States recently spoke about the horrible crimes committed against the Comfort Women, and the U.S.'s role in addressing the issue. (*See* Press Conference by Presidents Obama, Park in Seoul, The White House, Office of the Press Secretary, April 25, 2014 ("any of us who look back on the history of what happened to the comfort women . . . have to recognize that this was a terrible, egregious violation of human rights. Those women were violated in ways that, even in the midst of war, was shocking. And they deserve to be heard; they deserve to be respected; and there should be an accurate and clear account of what happened . . . my hope would be that we can honestly resolve some of these past tensions")).[1] The President's comments notwithstanding, Plaintiffs continue to argue that the Monument interferes with and they are permitted to enforce the executive's foreign affairs power. They are wrong.

---

[1] Available at http://www.whitehouse.gov/the-press-office/2014/04/25/press-conference-president-obama-and-president-park-republic-korea. The Court may take judicial notice of the statements in this official government document. *See, e.g., American-Arab Ant-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995).

1    As to standing, Plaintiffs now concede that the Monument is not objectively
2  offensive, but assert that their subjective interpretation creates injury-in-fact.  This
3  view is unsupported and fails as a matter of law.  Second, Plaintiffs fail to
4  meaningfully engage Glendale's argument that their first claim presents a
5  nonjusticiable political question.  As shown in the Motion to Dismiss, each factor
6  supports the application of the political question doctrine here.  Third, Glendale's
7  speech and petition rights defeat Plaintiffs' claims, as Plaintiffs were unable to
8  identify even a single case in which purely expressive conduct was preempted by
9  federal law.  Fourth, the conduct at issue falls within the traditional competence of
10 cities, and therefore Plaintiffs must demonstrate a conflict between the Monument and
11 U.S. policy.  As demonstrated above, Plaintiffs now concede, and in any case could
12 not possibly dispute, that the Monument is completely consistent with U.S. policy.

13   Rather than trying to identify a limiting principle so that their argument would
14 not invalidate an enormous amount of municipal and state conduct all over the
15 country, Plaintiffs instead embrace its severity.  They argue that public school
16 curricula, and presumably all other public statues, monuments, museum exhibits, and
17 all other expressive state and local action that touches on foreign relations, are subject
18 to preemption under the foreign affairs power.  (*See* MTD Opp., at 19 n.15.)  That
19 extreme argument has no support in the law whatsoever.  It must be rejected, and the
20 Complaint must be dismissed.

21 **II.   ARGUMENT**

22    **A.   Plaintiffs Do Not Have Standing to Bring Their Claims**

23    Plaintiffs retreat from the allegations in their Complaint, and no longer claim
24 that the Monument objectively disapproves of either Japan or the Japanese people.[2]

---

[2] Indeed, the Monument clearly attributes the crimes committed against the Comfort Women to the "Imperial Japanese Army," which no longer exists.  (Complaint, at ¶ 11 (transcribing Monument text).)  And its only reference to the Japanese people is to ***honor*** the "women who were removed from their homes in…Japan" and forced to serve as Comfort Women.  (*Id.*)

1    Instead, Plaintiffs now contend that they have standing because they hold a purely
2    *subjective* belief that the Monument criticizes Japan.[3] (*See* MTD Opp., at 6:16-18
3    ("the plaque is *understood* by them to disapprove of their nation of origin and of the
4    Japanese people") (emphasis added); 8:2-4 ("plaintiffs' injury is their inability to visit
5    . . . a public park without experiencing what they *perceive to be* Glendale's criticism
6    of their nation of origin") (emphasis added).)

7    However, Plaintiffs do not cite any case holding that a plaintiff has standing due
8    to his or her *subjective* interpretation of what a statue might mean, even under the
9    relaxed standards of the Establishment Clause.[4] Put another way, if a statue does not
10   convey a religious message to a reasonable person (*e.g.*, a statue that simply states
11   "may the world enjoy peace") then a person could not challenge it. Indeed, if
12   Plaintiffs do not personally like the Monument, they are "free to ignore [it], or even
13   turn their backs, just as they are free to do when they disagree with any other form of
14   government speech." *Trunk v. City of San Diego*, 568 F.Supp.2d 1199, 1205 (S.D.
15   Cal. 2008), quoting *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492
16   U.S. 573, 664 (1989) (Kennedy, J., concurring in part and dissenting in part).

17   Again, *Barnes-Wallace v. City of San Diego*, 530 F.3d 776 (9th Cir. 2008), does
18   not control. Subsequent cases have repeatedly held that it is an Establishment Clause
19   case,[5] and the only case to have expressly analyzed the issue rejected the argument
20   that *Barnes-Wallace* can be extended beyond that context. *See Nat'l Ass'n for*

---

[3] *See* MTD Opp. at 6:17 (Monument is "understood by [Plaintiffs] to disapprove…"); 8:7-8 (Monument criticizes Japan "in plaintiffs' view").
[4] All of the cases that Plaintiffs cite where plaintiffs were offended by an *objectively* reasonable interpretation of the government installation involved the Establishment Clause, which is not implicated here. Significantly, "[i]n Establishment Clause cases, standing requirements are at their nadir," *Trunk v. City of San Diego*, 568 F. Supp. 2d 1199, 1204-05 (S.D. Cal. 2008), *rev'd on other grounds*, 629 F.3d 1099 (9th Cir. 2011).
[5] *See Nat'l Ass'n for Advancement of Colored People v. Horne*, No. CV13-01079-PHX-DGC, 2013 WL 5519514, at *7 (D. Ariz. Oct. 3, 2013) ("*Barnes-Wallace* is also an Establishment Clause case"); *Trunk*, 568 F. Supp. 2d at 1205 (S.D. Cal. 2008), *rev'd on other grounds*, 629 F.3d 1099 (9th Cir. 2011); *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F.3d 1043, 1071 (9th Cir. 2010) (Graber, J., dissenting in part and concurring in part) (listing *Barnes-Wallace* as an Establishment Clause "religious display" case).

*Advancement of Colored People v. Horne*, No. CV13-01079, 2013 WL 5519514, at *7 (D. Ariz. Oct. 3, 2013) (*Barnes-Wallace* is irrelevant in Equal Protection context).[6]

Moreover, the facts of *Barnes-Wallace* are far afield from this case. There, the defendant city had provided "control" and "dominion" over public land to an organization that *expressly* discriminated against, excluded, and publicly stated disapproval of lesbians and agnostics. 530 F.3d at 783, 785. By contrast, Glendale has not provided control of either Central Park or the Adult Recreation Center to any private organization. Moreover, Plaintiffs do not argue that any *objective* person visiting the Monument would regard it as criticizing or disapproving of any group of which Plaintiffs themselves are members. Instead, they simply claim a subjective dislike of the message the monument conveys. For this and other reasons, Plaintiffs' other cases do not apply here.[7]

### B. Plaintiffs' First Cause of Action Either Presents a Nonjusticiable Political Question or Fails as a Matter of Law

As explained herein, because Plaintiffs (1) do not dispute Glendale's installation of the Monument falls within an area of traditional competence; and (2) now concede that the Monument is fully consistent with U.S. policy (*see* MTD Opp. at 1 n.1), Glendale's political question argument no longer applies, and Plaintiffs' first cause of action fails as a matter of law (*see* Section D, *infra*).

However, if the foregoing were not true, then Plaintiffs' claim would be subject to dismissal pursuant to the political question doctrine. In Glendale's Motion to

---

[6] *Horne* defeats Defendants' argument that *Barnes-Wallace* can be extended because the plaintiffs there "advanced numerous claims not premised on the Establishment Clause," MTD Opp., at 8:14-15, as it found that "[t]he Ninth Circuit held that plaintiffs had standing under its Establishment Clause cases . . . and therefore never addressed the equal protection issue." *Horne*, 2013 WL 5519514, at *7.

[7] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000), was an environmental law case that dealt with pollution to a public river; a fact which Plaintiffs attempt to obscure by omitting the word "environmental" from their quotation of the case. *Compare id.* at 183 (discussing "environmental plaintiffs"), *with* MTD Opp., at 6:21-24. Similarly, *Buono v. Norton*, 371 F.3d 543, 544-45 (9th Cir. 2004), and *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1017 (8th Cir. 2012), were Establishment Clause cases dealing with religious symbols on public land.

Dismiss, it explained (1) the six factor test that courts apply when determining whether a case poses a nonjusticiable political question; and (2) why application of these factors here mandates the dismissal of Plaintiffs' first cause of action.

In response, Plaintiffs do not address any of the pertinent factors. Instead, they cite a few examples of courts addressing the merits of a foreign affairs challenge, only one of which even discusses the political question doctrine. In that case, *Deutsch*, the court was asked to construe a treaty, not to weigh the varied statements present here, and, in any case, it simply shows that the various factors are not always present to the same extent in different cases.[8] *See Deutsch v. Turner Corp.*, 324 F.3d 692, 713 n.11 (9th Cir. 2003). From there, without any meaningful analysis, Plaintiffs leap to the conclusion that this Court should reach the same result here. That is a *non sequitur*. As Glendale explained in its motion, all six factors applied by the courts compel the conclusion that Plaintiffs' first cause of action must be dismissed, including as illustrated by the *Joo v. Japan* decision cited in the Complaint.[9] (MTD, at 12-15.) (Glendale did not need to establish that all of the factors apply here, but they do.) Plaintiffs have failed to engage Glendale's arguments in any meaningful way. As shown, the Court should hold that, in the alternative, Plaintiffs' first cause of action is also subject to dismissal under the political question doctrine.

### C. Glendale's Rights of Speech and Petition Preclude Plaintiffs' Claims for Relief

#### 1. The First Amendment Protects Glendale's Installation of the Monument

Plaintiffs do not dispute that the Supreme Court and Ninth Circuit have not determined whether state or local governments have First Amendment protections and

---

[8] *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992), also does not help Plaintiffs. That case involved Equal Protection and Due Process challenges to a state law mandating the number of judges on the Los Angeles Superior Court, an inquiry that is within common judicial practice. *Id*. at 699.
[9] Continuing their retreat from positions stated in their complaint, Plaintiffs now try to distinguish the *Joo v. Japan* decision and the United States' Statement of Interest filed therein from this matter, even though they cited both in their pleadings.

fail to meaningfully address Glendale's arguments as to why they should. In addition to restricting all governments from infringing upon citizens' speech rights, the First Amendment should also be applied to prevent the federal government from restricting the speech of both states and local governments. (*See* MTD at 16:16-27, and authority cited therein.) This construction promotes both federalism and speech, because (as Glendale explained in its motion) for many citizens, petitioning their state or local government to issue a proclamation, construct a monument, install a library exhibit, etc., is the most effective way for them to exercise their speech rights. As Glendale also explained, the Supreme Court recently recognized the importance of collective action in advancing speech rights in *Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010) (which Plaintiffs do not even address). Thus, there is every reason to apply the First Amendment so as to maximize speech protections, rather than to restrict its application as Plaintiffs advocate.

### 2. There Is No Question That Cities Have Speech Rights, Regardless as To Whether They Are Grounded in the First Amendment

Even if the First Amendment did not technically apply, the Supreme Court and Ninth Circuit have held that local governments have free speech rights. Both parties cite *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009), which states:

> "***A government entity has the right to 'speak for itself.'*** '[I]t is entitled to say what it wishes,' and to select the views that it wants to express[.] 'It is the very business of government to favor and disfavor points of view.' Indeed, it is not easy to imagine how government could function if it lacked this freedom. 'If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed.'" *Id.* (emphasis added; citations omitted).

Moreover, as Glendale explained in its motion, the Ninth Circuit has already recognized that cities "have a long tradition" of exercising free speech rights on

matters *"such as foreign policy and immigration."* See *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1414 (9th Cir. 1996) (emphasis added).

In a footnote, Plaintiffs contend that the Monument is more dramatic than the boycott in *Alameda*, because it involves the dedication of land and purportedly excludes other (still unidentified) "messages." (MTD Opp., at 19 n.14.) However, the boycott in *Alameda* was a far more significant exercise of government action, because it was intended to have a coercive effect, specifically targeting a private company's finances. Moreover, Plaintiffs' reliance on the Supreme Court's observations about the nature of monuments in *Pleasant Grove* undermines Plaintiffs' claims. The Supreme Court concluded that the unique features of monuments meant that cities did *not* need to maintain "viewpoint neutrality." *Pleasant Grove*, 555 U.S. at 479-480. The Supreme Court rejected, rather than supported, Plaintiffs' position, noting that if Plaintiffs' claims were accepted:

> "Every jurisdiction that has accepted a donated war memorial may be asked to provide equal treatment for a donated monument questioning the cause for which the veterans fought." *Id.*

Finally, even if it were relevant given *Pleasant Grove*, Plaintiffs' statement that the Monument somehow "excludes other messages" is particularly specious here. Although Plaintiffs originally alleged it was "unfairly one-sided" (Complaint, ¶ 6), they now concede it is historically accurate. They never articulate the "other side" of the history of the crimes against the Comfort Women that is being "excluded." Indeed, with respect to a monument that is critical of war crimes and supportive of their victims, one can only wonder what the counterpoint could possibly be.

### 3. Plaintiffs Cannot Identify Any Authority That Would Permit the Foreign Affairs Powers of the Executive To Trump the Free Speech Rights of Local Governments

Plaintiffs contend that because the Establishment and Equal Protection Clauses sometimes restrict government speech, the foreign affairs powers granted to the executive in the Constitution must do the same thing. But Plaintiffs do not identify

*any* authority to support their argument. The Constitutional provisions they cite prevent a state from "enter[ring] into any treaty, alliance or confederation" or "agreement or compact . . . with a foreign power." (MTD Opp., at 19:6-13.) Plaintiffs also note that a state cannot "engage in war unless actually invaded." (*Id.*) Plaintiffs' attempt to equate entering into treaties or engaging in war with free speech rights is spurious. Furthermore, the other cases Plaintiffs cite that enjoined state or local activities did not involve expressive conduct, and were distinguished in Glendale's motion.[10]

### 4. Plaintiffs Do Not Dispute That Permitting the Foreign Affairs Power To Restrain State and Local Government Speech Would Lead To Extreme and Absurd Results

Finally, Plaintiffs ignore the extreme results that would follow if the foreign affairs powers of the Constitution could abridge any local governments' speech rights. For example, Plaintiffs insist that "Glendale's claim that public school curriculum cannot be preempted by the foreign affairs power is ***without support***." (MTD Opp., at 19 n.15 (emphasis added).) As such, according to Plaintiffs, states would be required to constantly censor or revise school textbooks (and presumably museum exhibits, library displays, and/or other historical memorials) at the whims of foreign officials who deny what even Plaintiffs now concede is historical truth. (MTD Opp., at 1:2-14.) The concept that the foreign affairs power and/or foreign officials' displeasure can preclude a local government from providing its citizenry accurate information about a historical event is unprecedented, and should remain that way.

The foregoing Supreme Court and Ninth Circuit authority make it crystal clear that Glendale enjoys free speech rights that protect its decision to construct the Monument (whether grounded in the First Amendment or not), but, regardless, even

---

[10] The only new case that plaintiffs cite, *Hines v. Davidowitz*, 312 U.S. 52 (1941), also did not involve any challenge to expressive conduct, and instead addressed an "Alien Registration Act" by Pennsylvania, which placed a number of burdens on immigrants.

if there were any doubt, the absurd results that follow from Plaintiffs' position lead to the inescapable conclusion that Plaintiffs' claims must be rejected out of hand.

### D. The Monument Also Cannot Be "Preempted" Under The Foreign Affairs Powers Because It Is Consistent With U.S. Foreign Policy

Plaintiffs do not dispute that:

1. Where a city acts within an area of "traditional competence," the plaintiff must prove an actual conflict with federal policy exists to claim that state action is "preempted." *See American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003).

2. Glendale's installation of the Monument falls within one of these zones of "traditional competence," because "[g]overnments have long used monuments to speak to the public,"[11] *Summum*, 555 U.S. at 470, and "[c]ities . . . have a long tradition of issuing pronouncements, proclamations, and statements of principle on . . . matters of public interest, including . . . foreign policy," *Alameda Newspapers*, 95 F.3d at 1414 (emphasis added).

3. The Monument is consistent with the United States' foreign policy regarding the Comfort Women (*see*, *e.g.*, MTD Opp., at 1 n.1), which Glendale established with its request for judicial notice (to which Plaintiffs do not object).

For these reasons, even if Plaintiffs had a cognizable right to assert or purely expressive conduct could be "preempted," their challenge would fail. Because Glendale is acting within an area of "traditional competence" and is not performing any action that is inconsistent with foreign policy, it has not run afoul of the foreign affairs powers of the federal government.

Rather than address the foregoing issues, which alone dispose of their challenge, Plaintiffs cite a jumble of cases that generically refer to the importance of

---

[11] Indeed, as the Supreme Court recognized, "[s]ince ancient times . . . monuments have been built to commemorate military victories and sacrifices and other events of civic importance." *Summum*, 555 U.S. at 470.; *see also Farley v. Healey*, 67 Cal. 2d 325, 328 (1967) ("city councils have traditionally made declarations of policy," including regarding foreign policy).

permitting the federal government to establish foreign policy.[12] However, the policy goals set forth in the various cases cited have already been addressed by the foregoing test above. Plaintiffs also cobble together statements from a group of Japanese political officials who do not approve of Glendale's Monument and documents reflecting the tension between Japan and South Korea over the Comfort Women issue. However, at most, that would show that the Monument might conflict with the foreign policy of ***Japan***. That is not the test. Plaintiffs were required to prove that the Monument conflicts with the ***United States'*** foreign policy, which they now concede they cannot do. (*See*, *e.g.*, MTD Opp., at 1 n.1)

As a separate and independent basis for dismissal, Glendale's Motion to Dismiss also demonstrated that the Complaint fails to allege any cognizable effect on U.S. foreign relations from the Monument, because there is none. (*See* MTD at 22-23.) In response, Plaintiffs wrongly argue that all that is required is an effect "in foreign countries," and that an actual impact on U.S. relations is "irrelevant." (MTD Opp. at 11 n.10.) First, this is contrary to Plaintiffs' own cited cases, which confirm that foreign affairs preemption is concerned with the U.S.'s ability to conduct foreign policy.[13] *See, e.g., Zschernig v. Miller*, 389 U.S. 429, 440 (1968) (law preempted because it "affect[ed] international relations . . . [and] impair[ed] the effective exercise

---

[12] Once again, all of the foreign affairs cases that Plaintiffs cite dealt with state or local laws that had a regulatory or coercive effect. Many were already addressed in Glendale's Special Motion to Strike (SMS, at 7 n.9), and the remainder are equally unhelpful to them. *See Hines v. Davidowitz*, 312 U.S. 52, 56 (state law requiring adult aliens to register annually, pay a fee, and carry an alien ID card); *Int'l Ass'n. of Machinists & Aerospace Workers, (IAM) v. Organization of Petroleum Exporting Countries*, 649 F.2d 1354, 1356 (9th Cir. 1981) (not a foreign affairs case; dismissing Sherman and Clayton Act claims brought against OPEC); *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S.Ct. 1421, 1425 (2012) (suit challenging State Dept.'s refusal to record U.S. citizen's place of birth as "Jerusalem, Israel"); *Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434, 436-37 (1979) ($550,000 in county property taxes assessed against cargo of foreign shipping companies); *New York Times Co. v. City of New York Comm'n on Human Rights*, 41 N.Y.2d 345, (1977) (administrative ruling that New York Times had to stop publishing ads for employment in foreign country).

[13] Indeed, Plaintiffs' ***own briefing*** refutes this suggestion. (*See* MTD Opp., at 14:24-26 (arguing (wrongly) that the Monument is preempted because it has "a direct impact upon foreign relations").)

of the Nation's foreign policy"); *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1077 (9th Cir. 2012) (law preempted because it "ha[d] a direct impact on foreign relations and [could have] adversely affect[ed] the power of the central government to deal with those problems").

Second, the Monument has, in any event, had no tangible effect in any foreign country. Plaintiffs continue to point to the negative reactions of Japanese officials as the purported "effect" of the Monument. However, they fail to identify even a single case where mere criticism from foreign officials was held to constitute a sufficient effect to justify preemption. This is unsurprising, given that such a rule is utterly unworkable. (*See* MTS at 14:7-20.) The suggestion is especially problematic in this case, where the action challenged is a purely expressive, accurate commemoration of historical events. In effect, Plaintiffs propose to give veto power to officials in every foreign country around the world over state and local governments' provision of accurate information regarding historical events to their citizens. Few suggestions could be more antithetical to principles of free expression, federalism, comity, and democracy. *See Alameda Newspapers*, 95 F.3d at 1415. Thus, for this additional reason, the Court should reject Plaintiffs' argument and dismiss the Complaint.[14]

### E. Plaintiffs' Second Cause of Action Should Also Be Dismissed

For the reasons stated in Glendale's Special Motion to Strike, which are incorporated herein by reference, Plaintiffs' claim should also be dismissed, and/or the Court should decline to exercise supplemental jurisdiction over it.

### F. The References to Sections 1983 and 1988 In the Complaint Should Be Stricken

As shown above, Plaintiffs' purported federal claim fails as a matter of law. Moreover, even if Plaintiffs had pled a cognizable federal claim, that claim is not under Section 1983, to which the Complaint barely refers. In response, Plaintiffs offer

---

[14] Plaintiffs do not contest that if the Court dismisses Plaintiffs' first cause of action, it should also dismiss Plaintiffs' purported state law claim pursuant to 28 U.S.C. § 1367(c)(3). *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

that motions under Rule 12(f) are "disfavored," but they do not dispute that the Complaint contains only a *single reference* each to Sections 1983 and 1988, and no real attempt to plead a 1983 claim. Plaintiffs' purported federal cause of action is titled "Unconstitutional Interference With Foreign Affairs," and does not refer to Section 1983 at all. Because 1983 and 1988 are irrelevant to the issues herein, at a minimum, if the Court were to allow this case to proceed, it should strike all references to them in the Complaint. *Doan v. Singh*, 1:13-CV-00531-LJO-SMS, 2013 WL 3166338, at *14 (E.D. Cal. June 20, 2013).

### G. The Complaint Should Be Dismissed With Prejudice

Finally, because Plaintiffs have neither sought leave to amend their Complaint, nor could possibly correct all of the deficiencies in their claims, the Court should dismiss Plaintiffs' claims with prejudice. *See MultiCare Health Sys. v. Lexington Ins. Co.*, No. 12-35436, 539 Fed.Appx. 768, 772 (9th Cir. Aug. 28, 2013) (dismissal with prejudice was proper where, as here, plaintiff "has not put forward any argument that would save its complaint from dismissal").

## III. CONCLUSION

For these multiple independent reasons, Plaintiffs' claims fail as a matter of law, and must be dismissed.

Dated: May 5, 2014

GLENDALE CITY ATTORNEY'S OFFICE
Michael J. Garcia
Ann M. Maurer
Miah Yun
Andrew Rawcliffe

SIDLEY AUSTIN LLP
Bradley H. Ellis
Frank J. Broccolo
Christopher S. Munsey
Laura L. Richardson

By: /s/ Bradley H. Ellis
    Bradley H. Ellis
    Attorneys for Defendant
    CITY OF GLENDALE